DARRYL A. WATSON, APPELLANT, V. CITY OF GRAND
ISLAND, NEBRASKA, A MUNICIPAL CORPORATION, AND
DWIGHT JOHNSON, APPELLEES.

319 N.W.2d 733

Filed May 21, 1982. No. 44049.

J. Murry Shaeffer, for appellant.

Keith Sinor, City Attorney, for appellees.

Heard before McCOWN, HASTINGS, and CAPORALE, JJ., and STUART and HIPPE, D. JJ.

HIPPE, D.J.

The trial court refused the plaintiff's request that the court order Grand Island to promote him. He was a patrolman wanting a pay advancement. The promotion came later, but he wanted an order to make it effective approximately 6 months sooner. We agree with the trial court, and we affirm.

Under a collective bargaining agreement between the City of Grand Island and Local No. 516, International Brotherhood of Police Officers, seven pay steps were set up for police officers.

The dispute in this case comes from the plaintiff's belief that he should have been promoted from step 5 to step 6 in October 1978. His immediate supervisors completed an evaluation certifying him to be satisfactory in all but one of six categories. Police officers were evaluated in six categories and could get either an outstanding, satisfactory, improvement needed, or unsatisfactory rating in each of the six categories. There is also a summary rating. The plaintiff's regular anniversary employment

date was October 1977 to October 1978. His evaluation showed him satisfactory in five categories, improvement needed in one category, and a summary rating of satisfactory. This was approved by all of the supervisors in the police department. When it went to higher administrative channels for a pay increase, it was denied by the city manager, Dwight Johnson. He said: "I have reviewed the merit evaluation of Patrolman Watson and the recommendation for a merit increase from Step 5 to Step 6 submitted by Deputy Chief Beilke. After careful review, I do not believe the recommendation for a merit increase should be accepted at this time. While Mr. Watson appears to have some commendable virtues as a patrolman, it also appears that there are some problem areas which are somewhat troublesome. Accordingly, I would ask that Mr. Watson's merit increase be deferred until such time as definite progress is shown in the problem areas. I would assume that it would take approximately three to six months to establish definite progress over a period of time. The current personnel rules (under which the Police Department is now operating) provides [sic] for management descretion [sic] in the granting of merit pay increases. Also, the language of the now pending police contract for the current year provide [sic] for descretion [sic] in merit increases. Therefore, we are not undermining the present negotiations with this action.

"Please feel free to contact me should you wish to discuss this matter further. Thank you."

This notice was dated October 20, 1978. At that time, the previous collective bargaining agreement had expired by its own terms and a new agreement was being negotiated, but it had not been finalized. About 2 months after the city manager refused the pay increase, the police union and the City reached a second collective bargaining agreement. It was

signed on December 27, 1978. All parties backdated the effectiveness of the agreement to August 1, 1978. Accordingly, it was agreed that this new agreement would be effective on October 20, 1978.

Both collective bargaining agreements incorporated by reference all of the provisions of the City's personnel system and civil service commission provisions which did not conflict with specific points covered in the respective collective bargaining agreements.

Both agreements provided, under their management rights sections, the following language: "Except where limited by express provisions elsewhere in this Agreement, nothing in the Agreement shall be construed to restrict, limit, or impair the rights, powers, and the authority of the City as granted to it under the laws of the State of Nebraska, and the City's ordinances. These rights, powers, and authority include, but are not limited to the following:

. . . .

"The right to classify jobs and to allocate individual employees to appropriate classifications based upon duty assignments. The City will not abolish or change any bargaining unit classifications for the purpose of depriving the bargaining unit employees of their benefits under this Agreement."

The plaintiff contends that the first agreement was held over and applied to October 1978 raises. Its language was mandatory as to how long an officer would remain in one step. He claims that the passage of time and approved evaluation required an immediate raise. Even if discretion could be used in granting the promotion, he claims it was arbitrarily used to deny it.

The trouble with this argument is that the second contract was agreed to be the controlling agreement. It clearly gives final management discretion to the city manager in granting these promotions.

The manager did have reasons for refusing the in-

crease and gave them in his letter denying the request. Evidence showed other instances of like treatment to other departments. No favoritism or unequal instances were shown. The city manager had a written policy that was followed when any evaluation had one category less than satisfactory. That policy provided that a raise would be postponed unless and until a counterbalancing rating above satisfactory was achieved. All departments and employees affected by this policy were shown by the evidence to be treated the same way.

We therefore conclude that the trial court was correct in its judgment that final discretion was with the city manager to decide on the raise. We also agree that he was not arbitrary or capricious in exercising it. Therefore, the judgment of dismissal is affirmed.

AFFIRMED.